May it please the Court, my name is Felicia Jones and I represent Christian Collins. I'm with the Federal Public Defender's Office. Christian Collins is a 24-year-old man who is currently serving a 100-month sentence within the Bureau of Prisons for his plea of guilty to the offense of being a felon in possession of a firearm. This 100-month sentence is twice the advisory guideline range absent the misapplication by the District Court of two particular United States sentencing guideline provisions. Mr. Collins was arrested for being a felon in possession. He was in a car with some individuals, a gun was found in a flower pot nearby. Mr. Collins admitted possession. He was handcuffed, placed in a police vehicle, transported to a police station where he then again orally confessed. He was handcuffed at that time, shackled to a desk within the police station. This was some time, of course, some hours from the completion of the Felon in Possession Act. During the course of his trial, there was some questioning about whether or not he was involved in another offense. In a momentary flash of anger or some sort of change of mind. In your brief, you said petulance. Petulance, yes. Petulant is what our law clerks become when we disagree with their work product. Yes. Well, he grabbed the form. He was shackled still at the table and tore it. Now, it was pieced back together again. There's allegations that he grabbed a pencil that he had used to write the confession. Was it a pencil or a pen? A pen, I mean a pen. And your brief said, oh excuse me. It was a pen. Could you describe the pen? Just a regular pen like this. It wasn't an extra long. It was just a, I think it was black. Black. Black pen. So. Your brief says that he pointed it twice at the detective's face. Pointed. Pointed. Pointed. No contact was made. He's not charged with assault in the state. They punched Mr. Collins. He was already still shackled at the table. Punched him in the face. And at sentencing, the district court applied a six-level enhancement under 3A1.2C for assault of a law enforcement officer during the course of or immediate flight there from the offense. That was a direct misapplication of that guideline. That guideline provision is made for conduct that occurs, of course, when officers are trying to secure a defendant. Maybe when there's flight, there's a high-speed chase. That's the common sense, plain language meaning of that application. And that's where it's applicable. Not for conduct that is alleged to have occurred a significant period of time after the completion of the offense. Of course the gun was secured at the scene. Taken, put into evidence. And he didn't have access to it. So that crime of being a felon in possession was completed. It was over. This was post-arrest custodial interrogation. And to apply a six-level increase, this was a different officer. I don't even think it was the same officer. It was a direct misapplication. And that's a substantial increase in his advisory guideline range. The cases generally, of course, are, like I said, fleeing. The plain language is during the course of or immediate flight there from. He was no longer in flight, of course. He was in custody. He was he had been handcuffed. And then later he was shackled to the table. That crime of being a felon in possession was complete. So that was a misapplication on that. Now as to the other guideline provision that was misapplied, that is 3C1.1. That is the obstruction of justice. He did not attempt to obstruct the investigation of this particular federal offense. He had, in fact, complied throughout, confessed orally, and even made a written confession. And so that investigation of this federal offense was complete. The fact that maybe this applies to some other conduct or some other offense does not mean that the two levels for obstruction of justice should be applied to the conduct of being a felon in possession of a firearm. Wouldn't the Illinois murder potentially be a closely related offense? It's not this particular offense. And it's a potentially, it's offense that was never charged, doesn't exist. Isn't it enough, though, that it's if it's closely related? The idea, though, is that he's trying, when you say obstruction of justice, it's obstructing this present offense. And this gun, this is not this offense. That's potentially another separate offense that occurred at another date and time. And so if there's any guideline provisions to be applied, that would apply to particularly another federal case, if there's a federal case. And there was no allegation that there was going to be a federal case related to some Illinois offense. What was his purpose in trying to destroy this handwritten, or this written document? I know, Christian. I think he's a young man. He's a little impulsive. And I think he just got a little petulant. It was just a momentary change of mind. And I think it was- You persist in saying petulant. I'll have to look up, re-look it up. Go on, go on. It was a momentary flash. It was a very momentary flash. Not because he didn't want to accept responsibility for this offense. He never- Well, that's your version of what happened, but- Yes. Apparently, Judge Autry didn't quite agree with you. I'm not sure what the district court felt, why they thought that this alleged conduct applied to a completed offense, and it didn't quite give a reason for it applying. So it's a little difficult to discern how the district court overcame this temporal reading of 3A1.2C, which limits conduct during the course of offense or immediate flight therefrom. And there was no flight. He was in custody. So that's a direct- It wasn't one foot shackled down. He was shackled at the table in the police station during the course. And this was some hours and some, of course, miles away from the scene of the offense. And as I said before, the gun was in evidence seized by the officer. So it wasn't as if he had used the gun to assault an officer. I mean, that's what this guideline contemplates. Wasn't the confession that he tore up, though, relevant to the instant case? I mean, didn't he confess in that written document? He had confessed orally, and then he had reduced it to writing. So when you tear that up, aren't you obstructing with respect to an investigation of that instant offense? What he was doing, what obstruction says is that that is something that prevents them from furthering or completing their investigation. The investigation was complete. They had their confession. In the trial, they would have entered that written confession as evidence, right? Yes, and in fact, it was not destroyed. It's pieced together, he tore it, crumpled it, and it was torn. But then, he didn't attempt to eat it or anything like that. It was just torn, he crumpled it. And that wasn't, you have to have the mens rea that you want to somehow prevent them from completing the investigation. Just expressing your anger or your dislike or your frustration is not an attempt, a deliberate idea, that I'm going to somehow block them from completing their investigation. It was a frustration, act of frustration, not a deliberate attempt to hide or evade. Well, what about, okay, respect to the investigation, what about the prosecution? And yes, he was still cooperating even though he crumpled the thing and expressed his frustration. He didn't make any statement saying, you know what, I didn't have that gun. I changed my mind, I didn't have it. That did not occur. He never at any time expressed a change of heart about accepting responsibility and received acceptance of responsibility at sentencing as well, three level reduction. So whatever first, go on. I reserve the rest of my time, thank you. Mr. Ray, good morning again, you may proceed. Good morning again, your honors. May it please the court. As you all know, I'm Thomas Ray, I represent the United States of America in this case. I'd like to begin with what I believe are areas where the parties, in fact, agree. We set aside the characterizations in the briefs. Let's focus on the guilty plea agreement, as well as the transcript and the record from the actual sentencing hearing, and both of those, I believe, indicate there's no dispute as to what happened on May 29th, 2012. This is true in terms of Mr. Collins' firearm possession. It's also true as to what happened in that interview room. And let's talk about the record. Mr. Collins, his hands were free. He was shackled by one leg, about 12 inches, two feet of chain. He attempted to destroy that written statement in multiple different ways, by ripping it, putting it behind his back, moving his chair away from the officer as the officer tried to retrieve it. And he clearly assaulted that officer. He didn't point a pin at the officer. He tried to stab the officer in the face twice with that pin. That was something that Judge Autry clearly articulated. How though is it during the course of the offense or immediate flight therefrom? There's or between those two phrases. And the plane- I'll take either one of them. And our focus is on during the course of flight, and here's why, Your Honor. He's been arrested, he's shackled to a table. It's hours after the initial arrest, and that's during the course of flight. Yes, and let me walk the court through my analysis. Because we have an agreement as to what happened in that room. Again, that's not disputed. Here's what's also not disputed. His acts inside that room qualify. They are covered by what the guidelines identify as relevant conduct. No, that doesn't work. 1B1.3 says, unless otherwise specified. And I would say here it's otherwise specified. So you're going to have to convince me that it's immediate flight. Let me walk you through the difference, all right? And I'm hopeful I can convince you. During the course of the offense, it uses the word offense. Not more restrictive language like offense of conviction. It uses the word offense. That takes us back to the definition of offense. And as the court noted, offense includes relevant conduct unless a different meaning is specified or otherwise clear from the context. And what I would suggest to the court is that the language that the guidelines use. Just the term offense with no further specification indicates that the guidelines want this section to be treated broadly. Broadly, set aside the immediate flight they're from for a moment. I'll get to that in a second. They want it to be treated broadly. The plain language allows for that. And when we talk about relevant conduct, that includes. But doesn't your reading what you're attempting to do essentially make immediate flight there from surplusage? It does not. It does not. And here is why. For, as I noted, there's an or there. They're treated separately. But in our brief, there's a very good example there, which I think still gives effect to that language. If you take what Mr. Collins did in that interview room. And the only thing you change is what he was trying to do. He's not trying to tear up the statement. What he's trying to do is escape. He's trying to escape from custody at that point. That language, that or, immediate flight there from, I would suggest to the court, it's still effective. It still has application. But there's also instruction out there for this court. Did the court find that he was attempting to escape? No, I'm giving the court an example. Judge Garner, if I understand. Now you might have a flight situation, if that were so. Correct, but what I believe your question was, if we interpret during the course of the offense, as I'm suggesting, as the district court did, and as I'm suggesting is permissible, doesn't that basically invalidate the flight provision? The second part. And what I'm suggesting to the court is, you can look at it the way we are looking at it. And still, if that issue of flight would arise, you're still giving context, you're giving a life to that second part. Even if we were to buy your statement that we use 1B1.3 relevant conduct to define offense, what offense was this during the course of? This is still, and this is one of the things that the district court touched upon in the record that it made. This all still goes to him being a felon in the possession of the firearm. The court talked about the continuum of time. I believe that was the phrase that Judge Autry used. And he specifically focused on things such as the close time and proximity. The close time and proximity to the initial stop, the arrest, and the finding of the weapon. The court viewed it as a whole transaction of the offense of being a felon in the possession of a firearm. The judge also made a direct finding. The investigation was still underway. While I understand the desire to want to cut this off, basically right at the point where he drops that firearm in the flower pot, that's not how these things work in the real world. And the district court took note of that. It talked about how an interrogation is part of an ongoing investigation. And here's the other thing I would suggest, Judge Grunder. Judge Autry, when he looked at this, was not only suggesting that this would fall under the guise of relevant conduct, but in Judge Autry's mind, I believe his statement suggests that the offense was still occurring. Let me ask this way. Even if we buy the 1B1.3, it says during the commission of the offense of conviction, that's clearly not on the table. Correct. Preparation for that offense, clearly not on the table. Correct. Or in the course of attempting to avoid detection or responsibility for that offense. That's where we are. How is he attempting to, when he's in the middle of confessing, attempting to avoid detection or responsibility? Well, in this, your question actually goes to both issues that are before the court. One goes to the question that you pose. It also goes to the materiality of that written statement. As was discussed at the district court level, verbal statements are good. Written statements are usually considered better. And when we put this in reality, if this case were to proceed to trial, which it didn't end that way, but there's a whole host of situations where a cross-examination is based upon the fact that, oh, you're telling this jury that you had a verbal statement, but either A, you didn't give an opportunity for a written statement, or where is the written statement? And so he's trying to avoid responsibility by negating his connection, that knowing possession of that firearm. Here's the other reason. I'm sorry, I don't want to interrupt you. Well, I thought he was trying to stab the police officer and that that occurred before he tried to tear up the confession. My understanding, my interpretation of what happened is that this was all occurring at once. The goal was to separate himself from that officer in order to ensure he had the time and the space to destroy the written statement. And I'd suggest to the court that the only reason that didn't happen was because the officer had to use physical force to subdue him. And even after that occurred, here's how we know it was going to the statement, even after that occurred, the defendant held on to, Mr. Collins held on to another portion of that statement, continued to try to destroy it while kicking at the officer. And one of the things I want to point out to the court is this with my less than two minutes that I have. Well, let me ask another one. At what point, under your reading of this, at what point is a 3A1.2 enhancement not possible? That is an absolutely fair question. And I think it depends obviously on the facts of each specific case and based upon the district court's interpretation as well as the probation offices, frankly. And what I'm suggesting to the court is that as long as the facts reasonably fit within the definition of relevant conduct, then that's how the determination has to be made. And Judge Autry was sensitive to that. In the record that Judge Autry made, he talked about time and where he as the sitting district court judge may have some difficulty if things had moved further in time. But that's not the case we have here. Judge Autry saw this as a continuum of time that fell well within this guidelines application. And so my suggestion to the court is this. At some point in the future, if the court has to set where that outer barrier is in some other case, I believe based upon the facts of this case and what Judge Autry established, Mr. Collins' case is gonna fall well within that outer limit. But I'm not just standing here saying this on my own. I direct the court to the 10th Circuit case of Blackwell. In that situation, again, my time is short, but it compared these chapter three enhancements in similar language. We have during the course of the offense, it looked at in the course of the offense and found that that covered relevant conduct as opposed to 3A1.2a that talked about conviction of the offense, which Your Honor's right. That was a 3A1.3 case, right? Yes, Your Honor. Which doesn't have the immediate flight there from Lang. And that is not what we're relying on. We're relying on during the course of the offense in 3A1.3, which has in the course of the offense. I believe there are similarities there that are instructed. Tell me why I can get to 1B1.3 when it begins with the words unless otherwise specified. And I would contend it's specified in 3A1.2 to be during the course of the offense or immediate flight there from. And I believe that you don't get past the or. You get there by looking at the guidelines author's choice of just the word offense during the course of the offense and because they chose that word as opposed to offensive conviction. And offensive conviction is used elsewhere in the guidelines but because they chose that word offense, it takes you back to the definition of offense in the guidelines, which includes relevant conduct and the definition of relevant conduct, which covers what we have here. And that is what the Blackwell court did. Although that was a 3A1.3 case, they did talk about our section. It's missing the language or immediate flight there from, which to me makes it a different case. In terms of Blackwell? Yeah. Well, if you go further in Blackwell, after they undertake their analysis of 3A1.3 in comparison to 3A1.2A, they take a step further and they actually use the language of 3A1.2C. It is in the case and they indicate that includes relevant conduct. And they go on to rely cases, rely on another case in the 10th circuit, as well as I believe it's the sixth and the ninth who have taken a similar approach. Obviously my time's expired. Let's approach it this way very briefly. What would be the adverse consequences of adopting the view that defense wants us to be? I think there would be. Well, go ahead. I shouldn't interrupt your answer. Go ahead. I think there would be two. All right. I think the first is it would- Leave the officer defenseless as of now? No, what I think it would do is number one, I think it would apply the guideline here in an overly restrictive fashion. It was not intended by the authors of the guidelines. Number two is this, you know, the guidelines attempt as best they can to apply just that, a sentencing scheme to apply to a whole host of situations. And the guidelines can't identify every single situation that may arise. And that's what's unique about this case. It is unique. This is a unique set of facts. And if you look at what Mr. Collins did to that officer or attempted to do to that officer, and you look in the guidelines as to how that type of conduct, which is relevant conduct, I understand the disagreement as to whether or not the guideline applies. It is relevant conduct and the question becomes setting aside a variance, can the guidelines address that? And I believe the guidelines intended this type of leeway and flexibility to address this type of unique situation. Thank you. Thank you, Your Honor. Ms. Jones. I think this is a very clear-cut case because the language is very straightforward. And this is a very old guideline. It's been enacted, I think, for 20 years. And in this 20 years, it's never been applied to a reported case of an alleged assault committed by an incarcerated defendant after his arrest, after the completion of the offense. So I think it's clear that that's not being done by prosecutors, it's not being done by district courts. We do disagree on whether or not there was even an actual assault. So we do disagree with that. He was not charged in the state court. There are no assault charges pending. He did not assault that officer. So I dispute that there was an assault because there were no- I can't resist, I shouldn't, we're somewhere in the sentencing. You were there at sentencing. I was there. You said there was no substantial risk of harm. Have you ever seen the movie Casino? Casino, yes, I have seen Casino. You remember what Joe Pesci did? Well, we won't do that. What I'm saying is, I know Chris Scott is a very slight man, and the officer was in no danger. If he grabbed the thing and he had an ink pen, he was shackled, the officer could have stepped away. A shackled individual with an ink pen, the officer wasn't touched with an ink pen. But we're not here, that didn't even occur during the offense. Do you have a response to Mr. Ray's argument that the guideline 3A1.2 specifically uses the term during the course of the offense, which brings into play potentially 1B1.3 because other places in the guidelines, the guidelines drafters know how to use during the course of the offense of conviction, when they want to limit it down to not including relevant conduct. Sure. Do you have a response to that? It could be case specific. If it's a type of offense, maybe there's some sort of conspiracy going on with possessing a gun. But in this particular case, once that gun was seized from him, the felon in possession aspect of it is done. Maybe there could be a case where there would be some sort of ongoing possession of a gun or something. In this case, the offense and the offense conduct is over. There's nothing more he could do once that gun was taken from him. That particular federal offense is over. And that's what he was charged with and that's what he pled guilty to. There was nothing more to be done once the possession was taken from him. So I suppose there could be something. Maybe there's a conspiracy to possess felon in possession and they're doing other things. But in this case, that offense is done. So my time is up. Thank you. Well, the case is submitted. Speaking for myself and only for myself, it's case arguments like this that make this job very, very interesting.